HERIBERTO M. HINOJOSA AND MARIA LILIA HINOJOSA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hinojosa v. Commissioner
Docket No. 343-81
United States Tax Court
T.C. Memo 1982-351; 1982 Tax Ct. Memo LEXIS 393; 44 T.C.M. (CCH) 216; T.C.M. (RIA) 82351; June 22, 1982. A. Kirby Cavin and E. G. Hall for the petitioners. David W. Johnson, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Taxable
Additions to Tax
Year
Deficiency
I.R.C. Sec. 6653(b)
1973
$57,581.12
$28,790.56
1974
90,985.78
45,492.89
1975
138,609.40
69,304.70
1976
131,332.13
Since the parties agree on the amount of deficiency owing for the tax years before us, the only issue remaining for resolution is whether any part of the underpayment *394 of income tax in each of the years 1973, 1974, and 1975 was due to fraud. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts is incorporated herein by this reference. The petitioners, husband and wife, resided in Brownsville, Texas, during the taxable years in issue and when their petition herein was filed. The petitioners filed joint Federal income tax returns for the taxable years 1973 through 1976 with the Director, Internal Revenue Service Center, Austin, Texas. The parties agree that there are due from the petitioners deficiencies in income tax, as follows: Taxable
Year
Deficiency
1973
$36,319.92
1974
80,087.02
1975
103,407.65
1976
21,612.19
The only issue remaining in dispute is whether there are due from the petitioners additions to tax for taxable years 1973, 1974, and 1975, under the provisions of section 6653(b) in the amounts set forth below (no issues remain in dispute with respect to the taxable year 1976): Taxable
Addition to Tax
Year
I.R.C. Sec. 6653(b)
1973
$18,159.96
1974
40,043.51
1975
51,703.83
During the taxable years 1973 through 1975, petitioners *395 owned the operated as a sole proprietorship an automobile parts business doing business as Hinojosa Auto Parts. During the taxable years 1973 through 1975, the petitioners also received income from apartment rentals. The petitioners derived unreported taxable income from both of these activities during these years. The respondent's examination of the petitioners' income tax liabilities for taxable years 1973 and 1974 commenced prior to the filing of the petitioners' Federal income tax return for the taxable year 1976. During the taxable years 1973 through 1975, in the course of her duties, petitioner Maria Lilia Hinjosa totalled sales invoices for each day using an adding machine which produced an adding machine tape. She was the only person involved in making these tapes. These daily adding machine tapes of sales invoices for the taxable years 1973 through 1975 show substantial understatements of sales from the amounts of sales reflected on the sales invoices. These daily adding machine tapes were totalled by petitioner Maria Lilia Hinojosa on a monthly basis. The monthly adding machine tapes were provided by petitioners to Herberto Ibanez for the purpose of preparing state *396 sales tax returns. Additionally, petitioners understood that this information was also to be used in preparation of their Federal income tax returns for 1973-1975. These tapes were provided by petitioners to Herberto Ibanez on a quarterly basis during 1973 and on a monthly basis in 1974 and 1975. The records of the petitioners, which were made available to Herberto Ibanez to prepare petitioners' returns for the taxable years 1973-1975, included the monthly adding machine tapes of sales invoices, check stubs, records of interest expense, the cost of new properties acquired for depreciation purposes, and the amounts represented by Heriberto Hinojosa to be the total rental income received by petitioners during each year. Petitioners' rental records reflected the following rental receipts received by petitioners for the taxable years 1973-1975: 1973
1974
1975
$4,074.84
$15,325
$24,864
The understatements of rental receipts for the taxable years 1973-1975 are: 1973
1974
1975
$684.84
$10,705
$19,334
Petitioner Heriberto Hinojosa maintained records of rental income and expenses, and supplied Herberto Ibanez the rental income and expense *397 figures for purposes of preparing petitioners' income tax returns. In some cases this information was provided over the telephone. Mr. Ibanez did not actually see the records themselves until he was shown them by respondent's agents after the income tax investigation of the years in issue was commenced. The respondent has determined the petitioners' taxable income for the taxable years 1973-1975 on the basis of the bank deposits method. The amount of petitioners' correct taxable income, the taxable income reported on the petitioners' Federal income tax returns, and the understatement of taxable income for the taxable years 1973, 1974, and 1975 are as follows: Correct
Reported
Understatement of
Year
Taxable Income
Taxable Income
Taxable Income
1973
$125,178.67
$32,192.08
$92,986.59
1974
182,091.26
31,380.94
150,710.32
1975
220,497.28
45,255.90
175,241.38
The petitioners' correct income tax liabilities, the income tax liabilities reported on the petitioners' Federal income tax returns, and the understatement of income tax liabilities for the taxable years 1973, 1974, and 1975 are as follows: Understatement
Correct Income
Reported Income
of Income
Year
Tax Liabilities
Tax Liabilities
Tax Liabilities
1973
$45,924.59
$9,604.67
$36,319.92
1974
89,548.39
9,461.37
80,087.02
1975
119,119.50
15,711.85
103,407.65
*398 The petitioners during taxable years 1973, 1974 and 1975 did not receive any gifts, legacies or devises, which were deposited into their bank accounts. The petitioners during the taxable years 1973, 1974, and 1975 did not receive any nontaxable or excludable income, receipts, cash or other assets, other than the specific items and amounts that were reflected in respondent's computations. In March 1972, Hinojosa Auto Parts leased from Walk Office Equipment three model 311 Sperry Rand Remington calculators, serial nos. 3032049, 3032108, 3032101. These machines were purchased by petitioners, pursuant to an option, in February 1974. The motor in Remington's model 311 was too fast and caused the accumulator or total mechanism to malfunction in some machines resulting in an incorrect total of the entries made on the tape. None of the petitioners' model 311's were ever serviced by Mr. Walk for this problem, and Mr. Walk has no knowledge of this defect in the petitioners' machines. This defect in Remington's model 311 did not cause incorrect entries to be made on the adding machine tape, i.e., the numbers or amounts entered on the keys to the machines would be correctly reflected *399 on the tapes. In October 1976, the petitioners purchased three Olympia calculators, but did not trade in the Remington model 311's. OPINION The sole remaining issue is whether petitioners are liable for additions to tax for fraud under section 6653(b). [1]
Section 6653(b) imposes a 50 percent addition to tax for a year in which any part of the underpayment of tax is due to fraud. The existence of fraud is a question of fact which must be ascertained by an evaluation of all the facts of the case. ; *400 . The burden is on the respondent to prove the existence of fraud by clear and convincing evidence. Section 7454(a); , affg. ; . Respondent must prove that petitioners acted with the specific intention of evading a tax believed to be owing. , cert. denied ; , revg. . This intention may be inferred from circumstantial evidence such as proof of conduct calculated to mislead or conceal. ; . It is not necessary for respondent to prove how much of the underpayment for a particular year was due to fraud since the addition to tax under section 6653(b) applies to every year for which any portion of an underpayment *401 is due to fraud. , remanding ; . We are presented with a purely factual question. The parties agree that the substantial understatements of income are in large measure attributable to the disparity between daily invoice figures and the figures transmitted to the adding machine tape by Mrs. Hinojosa at the end of each day. The daily tapes and the analysis of these tapes before us clearly demonstrate that the number of errors both in absolute terms and as a percentage of the entries is too great to be explained by mere inadvertence. Virtually all of these errors represent understatements and virtually none of them represent overstatements. The great majority of these discrepancies are attributable to a pattern of deleting a single digit on the invoice figure entered on the daily tape. Additionally these errors appear principally in the tapes dealing with taxable sales. Sales not subject to the sales tax reflected a very low error rate, again suggesting that the discrepancies on these tapes dealing with taxable sales *402 were not inadvertent. We also note that the banking and deposit data for the years in issue show hundreds of entries, and the error rate is negligible. We find that the nature, consistency, and magnitude of the errors, as well as their confinement to the tapes dealing with taxable sales, demonstrate by clear and convincing evidence that they were done intentionally. During the consideration of this case a number of defenses have been offered. It was initially suggested that the adding machine used may have been faulty. However, the machines were tested at different points, and found to be functioning properly. Also there was no indication that petitioners incurred extensive repair problems with these machines, and the known problems associated with their use do not produce the type of error that we are dealing with here. Finally, petitioners seem to place little reliance on this argument at this posture in the proceedings. Petitioners do suggest that any errors before us are attributable to human error, and if not, were intended solely to understate sales for purposes of state sales tax rather than the Federal income tax. We recognize that petitioners are hard working people *403 who have built up a fine business through industry and perseverance. They work 12 hours a day most days throughout the year and undoubtedly are tired at the end of the day. Nevertheless, as we indicated earlier, the magnitude, consistency, and the nature of the errors convince us that they were not inadvertently caused due to fatigue or any other factor, but reflect a pattern attributable to design. The understatement of rental receipts was also significant in the years 1974 and 1975. During 1974, petitioners failed to report more than $10,000 in rental receipts and in 1975 the figure was over $19,000. These substantial understatements, which reflected the greater portion of the rental receipts received, were not adequately explained on the record before us. It is clear that Mr. Hinojosa had records pertaining to rental receipts, and nevertheless provided Mr. Ibanez with incorrect figures for purposes of preparing his return. When we consider the rental receipts in relation to the remainder of the case, it makes it even clearer that petitioners understated their income during the years in issue with intent to defraud. This brings us to Mr. Herberto Ibanez, who is the focus *404 of petitioners' last line of defense. They contend that Mr. Ibanez gave them poor advice, both as to taxes and to general bookkeeping, and that had he asked for the correct figures they would have been provided to him. However, it is clear that Mr. Ibanez was given the accumulated figures that reflect the errors on the sales tapes, and that he received the information relative to rental income from Mr. Hinojosa. If petitioners had given Mr. Ibanez the correct figures, they would have appeared on the appropriate return. We recognize that petitioners had some difficulty with the language. However, they are intelligent, competent, and experienced business people whom we believe were sophisticated enough to realize what was transpiring. Accordingly, we find for respondent on the fraud issue, which is the only issue remaining for our decision. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. SEC. 6653. FAILURE TO PAY TAX. (b) Fraud.--If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse.↩